

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Colleen E. McGuinn* | *Suite 400* | *DIRECT: 410-209-4803* |
| *Assistant United States Attorney* | *36 S. Charles Street* | *MAIN: 410-209-4823* |
| *Colleen.McGuinn@usdoj.gov* | *Baltimore, MD 21201-3119* | *FAX: 410-962-3091* |

July 5, 2024

**<u>VIA ECF</u>**

Honorable Brendan A. Hurson
United States District Judge
District of Maryland
101 W. Lombard St.
Baltimore, MD 21201

      Re:    *United States v. Stephawn Malik Watson*
              Criminal No.  BAH-22-087 and 22-219

Dear Judge Hurson:

On March 10, 2022, the Defendant was indicted in the United States District Court for the District of Maryland and charged with Count 1 (Illegal Receipt of a Firearm, in violation of 18 U.S.C. § 922(n)); and Count 2 (Possession of a Stolen Firearm in violation of 18 U.S.C. § 922(j)). BAH-22-084 (ECF 1)  On January 4, 2024, the Defendant entered a plea of guilty to Count 1 (ECF 38).

In BAH-22-219, on June 21, 2022, the Defendant was indicted in the United States District Court for the District of Maryland and charged with Count 1 (Wire Fraud Conspiracy, in violation of 18 U.S.C. § 1349); Count 28 (Wire Fraud, in violation of 18 U.S.C. § 1343); and Count 42 (Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A) (ECF 1). On November 30, 2022, a Superseding Indictment was returned with the same charges (ECF 97).  On January 4, 2024, the Defendant entered a plea of Guilty to Counts 1, 28 and 42, Conspiracy to Commit Wire Fraud, Wire Fraud and Aggravated Identity Theft, respectively (ECF 201).

The parties entered in a plea agreement under Rule 11(c)(1)(C) that a sentence of no more than 65 months is appropriate for both cases. (ECF 201, ¶ 9).

The sentencing hearing in the above-captioned matters is currently scheduled for July 18, 2024, at 10:00 a.m.  As calculated in the Presentence Investigation Report ("PSR") (ECF 249), the Defendant's offense level is 22 and his criminal history category is I, resulting in an advisory USSG sentencing range of 41 - 51 months of incarceration, followed by the 2-year mandatory

minimum consecutive period of incarceration for Count 36.  ¶ 96, PSR.  The overall sentencing guidelines are therefore 65 - 75 months of incarceration.

The Government requests a sentence of 54 months of incarceration.  In addition to a period of incarceration, the Government requests a period of three (3) years of supervised release, restitution in the amount of $2,094,319.00 and a special assessment of $100 for each count.

The Government submits that its requested sentence is sufficient, but no greater than necessary, to satisfy the purposes set forth in 18 U.S.C. 3553(a).

## I.       **18 U.S.C. § 3553(a) Sentencing Factors**

The Government's requested sentence of 54 months of incarceration is supported by the factors outlined in 18 U.S.C. § 3553(a).

### (1)       **Nature and Circumstances of the Offense**

First, as to "the nature and circumstances of the offense," under 18 U.S.C. § 3553(a)(1), the Government submits that the offense conduct was serious and victimized several individuals and entities.  His blatant fraud during an international health crisis and subsequent possession of a stolen firearm is deserving of a significant sentence.

BAH-22-219:

In the spring of 2020, Congress passed the Coronavirus Aid, Relief and Economic Security (CARES) Act, which provided for a variety of economic benefits to struggling Americans during a time of severe negative economic impact as a result of the COVID-19 pandemic.  While most individuals were sheltering in place, taking care of loved ones, and often making tough financial sacrifices, the Defendant Stephawn Watson collaborated with others to fraudulently obtain and use COVID-19 benefit money, specifically unemployment insurance (UI) benefits.  The Defendant repeatedly took advantage of programs meant to help those in need; he did so for his own selfish purposes.  The personal identifying information (PII) of real people were used and compromised during this scheme.  These victims cannot fully know today the long term affects this breach will have on them and their financial security.

As detailed in his plea agreement, the Defendant used his email address in order for fraudulent benefits to be generated and received in the name of victim M.Q. in Arizona.  The Defendant's email address, TILLKILL305@gmail.com, was used for several other claims in Arizona as well.  The Defendant also worked with two of his co-conspirators in using victim K.F.'s information to set up and procure fraudulent benefits.  Co-defendant Smith used the name of K.F. to complete money orders payable to himself, totaling $6000, and withdrew hundreds of dollars from ATMs in K.F.'s name as well.

In February, 2021, the Defendant was living with one of his co-defendants, Michael Makoge, in Laurel, Maryland, and was present during the search and seizure warrant.  Eleven UI

cards were seized from Makoge's bedroom, to include a debit card in the Defendant's name where over $36,000 in benefits were loaded and depleted.  A card in the name of M.Q., was also found. Despite being arrested for drug charges after that warrant, the Defendant continued on with the scheme, sending a text just two days later to see if any UI benefits had been filed for him.

<u>BAH-22-084</u>:

On January 11, 2022, the Defendant was stopped in Cumberland, Allegany County, Maryland, while he was a passenger in a vehicle.  Under the Defendant's seat, a stolen Taurus 9MM handgun with a round in the chamber and 15 additional rounds in the magazine were located.



The Defendant lied about his identity at the time, providing the name of Dennis Watson.  The firearm belonged to a female residing in Hampton, Virginia, who reported the gun stolen out of her car in 2021.  At the time of the arrest, the Defendant had the outstanding warrants for his arrest:

- Illegal Possession of a Firearm – Prince George's County Circuit Court
- Illegal Possession of Ammunition – Anne Arundel Count District Court (from 2/21)
- Carry Pistol – Washington, D.C.

For the Prince George's County case, the Defendant indicted in that matter which disqualified him from possessing a firearm.

**(2)    The History and Characteristics of the Defendant:**

Also under 18 U.S.C. § 3553(a)(1), the history and characteristics of the Defendant must be considered.  The Government has factored the Defendant's criminal history and his background in determining that a recommendation of 54 months of incarceration is sufficient, but no greater than necessary.

Ironically, the entire COVID-fraud investigation began with Stephawn "O-Dawg" Watson and Michael Makoge.    Defendant Watson was being investigated by the Prince George County Police Department for narcotics and firearms violations.  The Defendant posted several images of himself on Instagram holding AK-style pistols, handguns with extended magazines, and other weapons.



October 18, 2020
Grey handgun with extended magazine



November 27, 2020
Def.(right) with black handgun with laser

4

The Defendant would also post message like the following:




August 25, 2020



December 11, 2020



January 11, 2021



"Fuck da opps y'all don die when I see yu"
February 3, 2021

During the February search of the Defendant's residence, the police found 9MM ammunition, digital scales, a P80 firearm and ammunition, bags of marijuana, a loads .357 Sig Glock magazine, multiple stolen checks, more ammunition and magazines, and large sums of cash.

Specifically, some of the large amounts of marijuana that were found were labeled "Mikey Pooh," the Defendant's "brand" of marijuana.[1]





The Defendant and Makoge led the police to their residence due to their drug dealing and brandishing of weapons on social media. The Defendant had multiple firearms charges at the

---

[1] "Mikey Pooh" is associated with the Defendant because of his rap music and his claim that he murdered a man named "Mikey Pooh." There are youtube videos of the Defendant bragging about this, that he beat the case as self defense. However, there is discrepancy as to whether or not this is true – the Defendant nonetheless used this name as part of his story and as a name brand stamp on the marijuana he sold. See https://www.youtube.com/watch?v=9U35qiTZTco. See also full interview of Defendant: https://www.youtube.com/watch?app=desktop&v=-FV1hefJwIQ&edufilter=NULL

time of his indictment in these matters.[2]   The Government argues that the arrest in Cumberland occurred because the Defendant was trying to avoid his three active warrants in the central Maryland area and was "hiding out."    It is clear however that at the time of these offenses, the Defendant was not on the straight and narrow path and, although he has no adult criminal convictions, he has been in the criminal justice system from a young age.  It seems the Defendant has eluded criminal convictions by extraordinary means or strange twists of fate, given the amounts of contacts for serious charges he has curated in his young life.  When given the opportunity of a dismissal or acquittal of a case, it seems the Defendant did not move on from his criminal associations and decisions.

### (3)    Need to Afford Adequate Deterrence to Criminal Conduct:

Under 18 U.S.C. § 3553(a)(2)(B), there is a need "to afford adequate deterrence to criminal conduct." A sanction needs to be imposed to send a signal to others who would contemplate engaging in wire fraud and aggravated identity theft.  A sentence of 75 months of incarceration for this fraud scheme and firearms violation deters others.

General deterrence is particularly important sentencing factor in fraud cases such as this one because it is viewed to be effective.  *See United States v. Martin,* 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence."); *United States v. Edwards,* 595 F.3d 1004, 1021 (9th Cir. 2010)("[B]ank fraud, unlike an assault in a tavern or even domestic abuse, tends to be a planned, deliberate crime, which allows plenty of time for reflection, calculation of the odds of success or failure, and the ultimate decision.")  The deliberate nature of fraud often renders it more difficult to uncover, since individuals engaged in fraud take affirmative steps to conceal their identities and conduct.

The pandemic led to a surge in identity theft and fraud against government programs in 2020 and thereafter, resulting in estimated hundreds of billions of total losses[3].  Despite its best efforts, law enforcement will be unable to catch and convict all of the opportunistic fraudsters who made off with taxpayers' funds during the pandemic.  This case presents a worthwhile opportunity for the Court to impose a sentence that will grab the attention of those who may be considering similar crimes.

### (4)    Need to Avoid Unwarranted Sentence Disparities:

Under 18 U.S.C. § 3553(a)(6), there is a need to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Although Wire Fraud cases are not novel in this jurisdiction, the backdrop of the COVID-19 crisis in the

---

[2] The Anne Arundel County case, D-07-CR-21-23570 was dismissed in favor of this indictment as it arose out of the February 2021 search warrant.

[3] *See* Richard Lardner et al, The Great Grift: How billions in COVID-19 relief aid was stolen or wasted, Associated Press, June 12, 2023, http://apnews.com/article/pandemic-fraud-waste-billions-small-business-labor-fb1d9a9eb24857efeb4611344311ae78.

United States from 2020 through at least 2022 is unique.  This case is even more specific because firearms, specifically machine gun possession, is a factor.

A somewhat similar case is *United States v. Jerry Phillips*, TDC-22-073, due to the firearms charge in addition to fraud.  Here, the defendant and his co-defendant, Jaleel Phillips, were sentenced to 7 years and 30 months in prison, respectively.   The men applied for UI claims as well as other loans, using the PII  of victims.  They were able to fraudulently obtain more than $1M in COVID-19 CARES Act Paycheck Protection Program (PPP) loan applications, Economic Injury Disaster loan (EIDL) applications and UI claims.  Additionally, Jerry Phillips had a machine gun in his possession at the time of his arrest, which he had purchased as a "ghost gun" and modified.  Both Jerry and Jaleel Phillips had a criminal history category of I.  Like the Defendant, Jerry Phillips also had body armor, ghost guns, and loads of ammunition at the time of his arrest.

Other COVID fraud cases include several that the Government has brought to the Court's attention during the sentencings of the Defendant's co-conspirators thus far.  In *United States v. Gladstone Njokem*, RDB-21-338, the defendant and his co-defendants conspired to impersonate victims in order to obtain money by submitting fraudulent claims for UI benefits.  Their scheme amounted to a $1.3M loss and affected over 183 victims with regard to stolen PII.   Judge Bennett imposed a sentence of 54M of incarceration in addition to the restitution and three years of supervised release.  The defendant's criminal history category was a II.

In the *United States v. Keon Ball*, DKC-20-248, the defendant was sentenced to 66 months in prison in relation to a $715,000 wire fraud scheme that encompassed at least 10 victims of aggravated identity theft.   The defendant applied for multiple COVID-19 CARES Act PPP loans using the names of the victims and perpetrated other types of frauds as well.

In a look across the country as to how various districts are sentencing COVID-19 related fraud cases committed during a time of national crisis, several cases are consistent with the Government's recommendation here and have yield significant sentences.  *See, e.g., United States v. Joseph Marsell Cartlidge, Eric Alexander McMiller, and David Christopher Redfern*, 1:20-CR-340 (M.D.N.C. 2022) (receiving 72 months, 66  months, and 60 months of imprisonment, respectively for submitting fraudulent PPP and EIDL applications, obtaining $1.2M in loans); *United States v. Lola Kasali*, 4:20-MJ-1106 (S.D. Tex. 2022) (receiving 70 months of imprisonment for submitting two fraudulent PPP loan applications and obtaining $1.9M in loans); *United States v. Tarik Freitekh*, 3:20-CR-00435 (W.D.N.C. 2022) (receiving 87 months of imprisonment for submitting fraudulent PPP applications and obtaining $1.75M in loans) *United States v. Adam D. Arena*, 21-MJ-05134 (W.D.N.Y. 2022) (receiving 66 months of imprisonment for his role in fraudulently obtaining and laundering approximately $950,000 in pandemic loans).

A sentence of 54 months is wholly consistent with the sentences imposed in this District and in the United States for this type of fraud  committed during a global pandemic, with the additional Possession of Machine Gun conviction.

**II.      Victim Impact**

The Government has notified the victims of the offense of the sentencing hearing; it is still unknown if some will submit victim impact statements, address the Court at sentencing, and/or attend the sentencing hearing.  No victim impact statements have been received to date.  Of course, as victims of the offense, they are entitled to do any/all of the above.  See, 18 U.S.C. § 3771.  As soon as the Government is aware, we will advise the Court.

**III.     Restitution Request**

Pursuant to 18 U.S.C. § 3663A and U.S.S.G. §5E1.1, restitution shall be ordered in this case.  As such, the United States respectfully requests that an Order of Restitution be entered, as part of the Defendant's sentence in this matter, in the total amount of $2,094,319.00, joint and several with the co-defendants.  The Government will provide contact information for the payment of restitution to these victims to the Courtroom Deputy via a separate document.

**IV.     Forfeiture**

In case BAH-22-219, the Government will file a forfeiture order in advance of sentencing reflecting the total amount.

In case BAH-22-084, the defendant has agreed to abandon the firearm seized in this case as well as the cell phone.

**V.      Conclusion**

For the reasons set forth above, the government respectfully submits that 54 months of incarceration and 3 years of supervised release is a reasonable sentence, and is sufficient, but not greater than necessary to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a)(2).

Very truly yours,

Erek L. Barron
United States Attorney

Colleen Elizabeth McGuinn
Assistant United States Attorney

9